**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON**

| | | |
|---|---|---|
| RAHAM TWITTY, | : | |
| Petitioner, | : | |
| | | Case No.  3:03CV335 |
| vs. | : | |
| | | District Judge Walter Herbert Rice |
| ANTHONY J. BRIGANO,[1] Warden, | : | Magistrate Judge Sharon L. Ovington |
| Lebanon Correctional Institution, | | |
| | : | |
| Respondent. | | |
| | : | |

---

**REPORT AND RECOMMENDATION[2]**

---

**I.      INTRODUCTION**

On May 15, 2000, Petitioner Raham Twitty threatened to shoot his girlfriend Kia Richardson with a handgun in the presence of her four-year-old daughter.  Richardson grabbed her daughter and ran away screaming for help.  Evidence presented during his state criminal trial established that Twitty then fired the gun, although he contends otherwise.  The gunshot did not strike Richardson or her daughter.  Twitty next followed them in a car, stopped, exited the car, again threatened Richardson in the presence of her daughter – who was crying hysterically by this time – and finally left them alone.

During these events, someone called the police.  City of Dayton, Ohio Police Officers

---

[1]  At the time Twitty filed this case, Anthony J. Brigano was the Warden of the Lebanon Correctional Institution (LCI).  Ernie Moore is the current Warden of LCI.  *See* www.drc.state.oh.us.  To maintain clerical continuity, the caption of the case should remain the same.

[2]  Attached hereto is a NOTICE to the parties regarding objections to this Report and Recommendations.

began to look for Twitty with Richardson's assistance.  Twitty was soon spotted driving a car and a car chase ensued.

Twitty eventually stopped and exited his car.  Officers Mary Beall and her partner Shawn Smiley cornered Twitty, who pointed a gun at them.  Officers Beall and Smiley drew their weapons and pointed them at Twitty while ordering him to put down his gun.  A tense stand-off ensued during which the Officers and Twitty repeatedly yelled at each other to put down their guns.  At one point, Twitty threatened to shoot Officer Smiley in the head if he did not put down his gun.  Officer Smiley continued to point his gun at Twitty.

In an attempt to diffuse the situation and obtain Twitty's cooperation, Officer Beall put down her gun and raised her hands.  Twitty responded by shooting Officer Beall in the neck, leaving her paralyzed.  Twitty then turned and began to point his gun at Officer Smiley, who shot Twitty.  (Doc. #10, Exhibit 18 at 5).

Twitty survived the shooting and was later tried before a jury in the Montgomery County, Ohio Court of Common Pleas.  The jury found Twitty guilty of nine criminal offenses.

Following his unsuccessful appeals in the Ohio courts, Twitty brings this case *pro se* seeking a writ of habeas corpus under 28 U.S.C. §2254 claiming that his criminal convictions violated his rights under the United States Constitution.

The case is before the Court upon Twitty's Petition (Doc. #2), Respondent's Answer And Return Of Writ (Doc. #1), Twitty's Amended Traverse and Supplemental Authority (Doc. #s 13, 22-29), Twitty's Motion To Order Production Of Evidence And For Expansion Of Record (Doc. #32), Respondent's Response In Opposition (Doc. #34), and Twitty's Reply (Doc. #35).

## II.     PROCEDURAL BACKGROUND

In May 2000 a Grand Jury in Montgomery County, Ohio issued a nine-count indictment against Twitty.  He was later re-indicted and charged with ten counts of criminal conduct.  The charges included:

Count One:      carrying a concealed weapon in violation of Ohio Rev. Code §2903.12(A);

Counts Two,
Seven,
and Eight:      felonious assault of Kia Richardson, Officer Beall, and Officer Smiley with
                automatic firearm specifications in violation of Ohio Rev. Code §§2903.11(A)(2),
                2929.14(D)(1)(a)(I), and 2941.144;

Count Three:    endangering children (Kia Richardson's daughter) with an automatic firearm
                specification in violation of Ohio Rev. Code §§2919.22(B), 2929.14(D)(1)(a)(I),
                and 2941.144;

Count Four:     failure to comply with order or signal of police officer with an automatic firearm
                specification in violation of Ohio Rev. Code §§2921.331(B), 2921.331(C)(4),
                2929.14(D)(1)(a)(I), and 2941.144;

Counts Five
and Six:        aggravated robbery with an automatic firearm specification in violation of Ohio
                Rev. Code §§2911.01(B), 2929.14(D)(1)(a)(I), and 2941.144;

Count Nine:     having a weapon while under a disability in violation of Ohio Rev. Code
                §2923.13(A)(3); and

Count Ten:      unlawful possession of dangerous ordnance with an automatic firearm
                specification in violation of Ohio Rev. Code §§2923.17(A), 2929.14(D)(1)(a)(I)
                and 2941.144.

(Doc. #10, Exhibit 3).

Twitty pled guilty to Count Nine, having a weapon while under a disability.  (Doc. #10, Exh. 8).  At the conclusion of his trial, the jury found Twitty guilty of the remaining nine charges.

3

The trial judge sentenced Twitty to consecutive sentences on each non-firearm-specification conviction totaling a definite sentence of fifty-eight years imprisonment. (Doc. #5, Exh. 10). The trial judge also sentenced Twitty to an eighteen-year term of imprisonment on each automatic-firearm-specification conviction, to be served prior to and consecutive with the definite term of imprisonment. *Id*. Thus the total sentence Twitty received equaled seventy-six years of incarceration. *Id*.

Twitty next sought relief by raising numerous claims in timely direct appeals in the Ohio Court of Appeals and the Ohio Supreme Court. (Doc. #10, Exhs. 13-22). He also filed an unsuccessful Motion to Reopen Appeal in the Ohio Court of Appeals claiming that his appellate counsel provided constitutionally ineffective assistance during his direct appeal. (Doc. #10, Exh. 23-30). He further appealed, in the Ohio Supreme Court, the Court of Appeals' rejection of his Motion to Reopen. (Doc. #10, Exh. 31-35).

When these efforts did not succeed in reversing his convictions, Twitty filed the present habeas corpus case. His *pro se* Petition raises eighteen Grounds for Relief. The Petition supports each Ground for Relief by citing to the Appendix and numerous Exhibits attached to his Petition. *See* Doc. #2 at ¶12. These Exhibits include the briefs Twitty filed in the Ohio Courts. This Report will therefore repeatedly reference both the Petition and Twitty's state briefs to illuminate the substance of his claims.

## III.    APPLICABLE STANDARDS

In 1867 Congress extended to the federal courts the power to grant a Writ of Habeas Corpus when a person "is in custody in violation of the Constitution or laws or treaties of the United States...." 28 U.S.C. §2241(c)(3); *see Williams v. Taylor*, 529 U.S. 362, 374 (2000). In

1996 Congress enacted the AEDPA[3] dramatically altering "the landscape for federal habeas

corpus petitions." *Rhines v. Weber*, 544 U.S. 269, 274 (2005).  "AEDPA 'requires heightened

respect for state court factual and legal determinations.'" *Fulcher v. Motley*, 444 F.3d 791, 824

(6th Cir. 2006)(citation omitted).

    Under the AEDPA, codified at 28 U.S.C. §2254(d), "a petitioner is not entitled to relief

in a federal habeas corpus proceeding unless the state court's adjudication of his or her ... claim

resulted in a decision that (1) was contrary to, or involved an unreasonable application of, clearly

established federal law as determined by the United States Supreme Court, or (2) was based on

an unreasonable determination of the facts in light of the evidence presented in the state court

proceeding." *Arnett v. Jackson*, 393 F.3d 681, 685 (6th Cir. 2005).  The phrases "contrary to"

and "unreasonable application" have independent meanings:

> A federal habeas court may issue the writ under the 'contrary to' clause if
> the state court applies a rule different from the law set forth in ... [Supreme Court]
> cases, or if it decides a case differently than we have done on a set of materially
> indistinguishable facts.  The court may grant relief under the 'unreasonable
> application' clause if the state court correctly identifies the governing legal
> principle from ... [the Supreme Court's] decisions but unreasonably applies it to
> the facts of a particular case.  The focus on the latter inquiry is whether the state
> court's application of clearly established federal law is objectively unreasonable
> ... and an unreasonable application is different from an incorrect one.

*Bell v. Cone*, 535 U.S. 685, 694 (2002)(citation omitted); *see Arnett*, 393 F.3d at 685.  A "state

court's application of federal law is unreasonable and habeas relief may be granted if the 'state

court decision is so clearly incorrect that it would not be debatable among reasonable jurists.'"

*Joshua v. DeWitt*, 341 F.3d 430, 436 (6th Cir. 2003)(citation omitted). When conducting this

reasonableness inquiry, the AEDPA prohibits granting a Writ of Habeas Corpus based on a

---

[3] Antiterrorism and Effective Death Penalty Act of 1996, 110 Stat. 1214.

federal court's *de novo* review of a state-court decision.  *Price v. Vincent*, 538 U.S. 634, 639 (2003); *see Joshua*, 341 F.3d at 436; *see also Rockwell v. Yukins*, 341 F.3d 507, 511 (6th Cir. 2003).

## IV.  SUFFICIENCY OF EVIDENCE

### A.  <u>Manifest Weight v. Sufficiency Of Evidence</u>

Twitty asserts in his Seventh, Eighth, and Ninth Grounds for Relief that several of his convictions were against the manifest weight of the evidence.  He thus challenges the following convictions: felonious assault of Kia Richardson; endangering children; and felonious assault of Officer Smiley.  (Doc. #2 at ¶12(G)-(I)).  Twitty further argues that the state court decisions "denying relief were both contrary to, and involved an unreasonable application of, clearly established law."  (Doc. #13 at 12).

Respondent contends that habeas corpus relief is not available based on a challenge to the manifest weight of the evidence.

Under Ohio law, a broader test applies to claims challenging the manifest weight of the evidence compared to the test applicable to sufficiency-of-evidence claims under the Fourteenth Amendment.  *See State v. Thompkins*, 78 Ohio St.3d 380, 387-88 (1997), *superceded in part by state constitutional amendment*, *State v. Smith*, 80 Ohio St.3d 89 (1997); *see also State v. Martin*, 20 Ohio App.3d 172 (1983); *State v. Thompson*, 127 Ohio App.3d 511 (1998); *cf. Tibbs v. Florida*, 457 U.S. 31, 42-43 (1982).[4]  The distinction was thoroughly discussed in *Echols v. Houck*, 2005 WL 1745475 at *3 (S.D. Ohio, July 25, 2005) as follows:

---

[4] For an example of the many recent unpublished Ohio cases recognizing this distinction see *State v. Braxton*, 2006 WL 1644268 at *2-*3 (Ohio Ct. App., June 15, 2006).

      In essence, sufficiency, which implicates due process concerns, tests the adequacy of the evidence in proving the essential elements of the offense charged and presents a question of law, which may not be resolved by the reviewing court through weighing the evidence.  In contrast, in determining whether reversal is warranted based on the weight of the evidence, the appellate court sits as a 'thirteenth juror' to assess the jury's resolution of conflicting testimony upon review of the entire record, which includes weighing the evidence and all reasonable inferences and considering the credibility of witnesses.  *Thompkins*, 678 N.E.2d at 546-47; *see also Tibbs*, 457 U.S. at 41-42; *Martin*, 485 N.E.2d 720-21.

      As the Supreme Court explained in *Tibbs*, 457 U.S. at 43, unlike a reversal on the ground of insufficient evidence, a reversal based on the weight of the evidence 'does not mean that acquittal was the only proper verdict.'  Rather, a reversal based on the weight of the evidence 'can occur only after the State both has presented sufficient evidence to support a conviction and has persuaded the jury to convict.  The reversal simply affords the defendant a second opportunity to seek a favorable judgment.  *Id*. at 42-43.

      A federal court may review a state prisoner's habeas corpus petition only on the ground that the challenged confinement violates the Constitution, law, or treaties of the United States, 28 U.S.C. §2254(a).  A federal court may not issue a writ of habeas corpus 'on the basis of a perceived error of state law.'  *Pulley v. Harris*, 465 U.S. 37, 41 ... (1984); *Smith v. Sowders*, 848 F.2d 735, 738 (6th Cir.), *cert. denied*, 488 U.S. 866 ... (1988).

This discussion led the District Court in *Echols* to dismiss the petitioner's claim that his conviction was against the manifest weight of the evidence as not implicating a federal constitutional concern but instead only raised an issue of state law that was not cognizable upon federal habeas review.  *Id*.

The same reasoning, cases, and result apply to the extent Twitty claims that several of his convictions were against the manifest weight of the evidence.  *See id*. (and cases cited therein).  A review of Twitty's Petition reveals that he bases each of his Seventh, Eighth, and Ninth Ground for Relief on challenges to the manifest weight of the evidence.  *See* Doc. #2 at ¶s12(G-I).  He does not refer to the insufficiency of evidence.  He instead phrases these Grounds for

Relief only in terms of convictions as against the manifest weight of the evidence.  *See id.*

Twitty's Petition also refers to the attached Appendix and Exhibits.  These materials include, in part, the briefs he filed in the Ohio Court of Appeals and the Ohio Supreme Court on his direct appeal.  By referring to these materials, Twitty demonstrates his desire to raise the same claims he raised in the state courts.  In this manner, therefore, he again challenges several of his convictions – as he did in the Ohio courts – by claiming they were against the manifest weight of the evidence, rather than asserting that the evidence was constitutionally insufficient to support his convictions.  *See* Doc. #10, Exhs. 14, 20.  As a result, Twitty's claims raised in his Seventh, Eighth, and Ninth Grounds for Relief are based on non-cognizable state-law challenges to his convictions.  *See Tibbs*, 457 U.S. at 42-43; *see also Echols,* 2005 WL 1745475 at *3.

### B.    Sufficiency Of Evidence

Even if Twitty intended to, and actually raised, in the Ohio courts and in his Petition a federal challenge to the sufficiency of the evidence, these claims lack merit.

The Due Process Clause of the Fourteenth Amendment protects a criminal defendant from conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he or she is charged.  *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *see Fiore v. White,* 531 U.S. 225, 228-29 (2001).  Under *Jackson v. Virginia*, the court must determine if, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found, beyond a reasonable doubt, each essential element of the crime.  443 U.S. at 319, 324.

This standard reserves to the trier of fact the responsibility to resolve conflicts in testimony, to weigh the evidence, and to draw reasonable inferences from the basic facts to the

ultimate facts. *Jackson*, 443 U.S. at 318-19; *see also Herrera v. Collins*, 506 U.S. 390, 401-02,

(1993); *Neal v. Morris*, 972 F.2d 675, 678 (6th Cir. 1992). Circumstantial evidence is sufficient

to support a conviction and such evidence need not remove every reasonable hypothesis except

that of guilt. *See Jackson*, 443 U.S. at 318-19, 326; *see also Walker v. Russell*, 57 F.3d 472, 475

(6th Cir. 1995); *see also Tilley v. McMackin*, 989 F.2d 222, 225 (6th Cir. 1993).

To the extent Twitty's appellate briefs, the Ohio Court of Appeals' opinion, and his

habeas Petition can be read to apply these standards, he has failed to show that his felonious

assault convictions or his conviction for endangering children were not supported by sufficient

evidence.

The Ohio Court of Appeals described the pertinent evidence admitted at trial as follows:

> Kia Richardson testified that as she and her four year old daughter walked home, Defendant confronted them in front of their house. Defendant had a backpack from which he removed a gun. While brandishing the gun, Defendant asked Kia Richardson if she wanted him to 'spray her ass.' Kia Richardson testified that what Defendant meant was did she want Defendant to shoot her. Richardson grabbed her daughter and immediately began running down the street, away from Defendant, screaming for help. While fleeing, Richardson heard a gunshot.
>
> Richardson continued running toward some neighbors who were standing outside, screaming for them to help her. One of those neighbors who also heard the gunshot, John Marks, asked Richardson whether she or her daughter had been shot. Marks also invited Richardson to come inside his home for safety. Meanwhile, Defendant pursued Richardson down the street in his vehicle. When he caught up with her, Defendant got out of his car, pointed his gun directly at Richardson, and said, 'What are you going to do now, bitch.'

(Doc. #10, Exh. 18 at 14-15, 40).

The jury found Twitty guilty of felonious assault of Kia Richardson in violation of Ohio

Rev. Code § 2903.11(A)(2), which provides in part: "No person shall knowingly ... [c]ause or

attempt to cause physical harm to another ... by means of a deadly weapon or dangerous

ordnance." The Ohio Supreme Court has held, "The act of pointing a deadly weapon at another coupled with a threat, which indicates an intention to use such weapon, is sufficient evidence to convict a defendant of the offense of 'felonious assault' as defined by R.C. 2903.11(A)(2)." *State v. Green*, 58 Ohio St.3d 239, syllabus, 241 (1991). Because this is precisely what the evidence established at trial, the evidence was constitutionally sufficient to support Twitty's conviction of felonious assault of Kia Richardson.

Viewing Richardson's testimony in the prosecution's favor as required by *Jackson*, 443 U.S. at 319, 324, her testimony was sufficient to establish beyond a reasonable doubt that Twitty pointed a gun at her and threatened to shoot her, and that she heard a gunshot as she ran away. Another witness, John Marks, corroborated Richardson's testimony about a gunshot by testifying that he heard a gunshot and looked up to see Richardson screaming for help while running with her daughter. (Doc. #10, Trial Tr. at 112-13). Based on Richardson's and Marks' testimony, any rational jury could find that Twitty was guilty of felonious assault of Richardson and that he knowingly attempted to cause physical harm to Kia Richardson in violation of Ohio Rev. Code §2913.11(A)(2), *see Green*, 58 Ohio St.3d at 241-42. The evidence was therefore constitutionally sufficient to support Twitty's conviction of felonious assault of Richardson. *See Jackson*, 443 U.S. at 319, 324.

The evidence was also constitutionally sufficient to support the jury's conclusion that Twitty was guilty of endangering children, Richardson's daughter, in violation of Ohio Rev. Code §2919.22(B)(2). This Ohio statute prohibits cruelly abusing a child under age eighteen. Ohio law defines "abuse" as "any act which causes physical or mental injury that harms or threatens to harm the child's welfare." (Doc. #10, Exh. 18 at 41). In addition to the above-

10

described testimony, Richardson testified that her four-year-old daughter was right at her side when Twitty pointed the gun at her and threatened to shoot her.  *Id*.  Richardson further testified that as she ran away from Twitty, she was dragging her daughter.  It was at this time she heard a gunshot.  (Doc. #10, Trial Tr. at 94-96).  A neighbor asked Richardson if she had been shot.  *Id*. at 96-97.

Richardson further testified that Twitty got in his car, sped down the street, stopped and stated to her "What are you going to do now?"  *Id*. at 100.  Richardson's daughter was crying hysterically by this time.  *Id*.

Another witness, John Marks, testified that he heard a gunshot and looked up to see Richardson and her daughter running down the street.  According to Marks, Richardson was telling her daughter, "Come on," in a tone "as if she were running for her life."  *Id*. at 113.  Her daughter was screaming "momma."  *Id*. at 113.  Marks further testified that he saw a gray Cadillac pull up.  Twitty exited the car and "he drew down on Richardson.  And said: 'Now, what are you going to ... What are you going to do now, bitch.'" *Id*. at 115-16.

Richardson's testimony together with Marks' testimony, when viewed in the light most favorable to the prosecution, was sufficient to establish beyond a reasonable doubt that Twitty threatened Richardson with a gun while in close proximity to Richardson's daughter, who as a result was crying hysterically.  Any rational jury could therefore conclude that Twitty caused Richardson's daughter actual emotional harm, or engaged in conduct that threatened to harm the welfare of, Richardson's four-year-old child in violation of Ohio Rev. Code §2919.22(B)(2).

Turning to the felonious assault of Officer Smiley, the evidence was constitutionally sufficient to support Twitty's conviction.  Officer Smiley testified that when he approached

11

Twitty, Twitty turned and pointed a weapon at him.  (Doc. #10, Trial Tr. at 229).  Officer Smiley

backed away and drew his gun, while telling Twitty to put his gun down.  *Id.* at 230-31.  Officer

Beall was crouched near a police car pointing a gun at Twitty.  Twitty repeatedly yelled at the

Officers to put down their guns.  *Id.* at 231-32.  Officer Smiley then testified:

> Defendant walked in front of the cruiser, direct line with me, having the gun pointed at me still.  Demanded that we put our guns down.  He pointed the weapon down at Officer Beall.
>
> Officer Beall put her gun down to the right side.  Put her hands up.  And in a I give up.  Or I surrender position.
>
> And as she put her hands down on the concrete, he looked at me and told me to put my gun down.  And I told him: I can't do that.  And he kind of took two steps to his right.
>
> * * *
>
> He then took two steps to his left.  And I told him to put his gun down one last time.  And he took the gun and then pointed it at Officer Beall and he fired one time.  And brought the gun back up, began raising it towards me.  And I fired my weapon....

*Id.* at 234-35.

Officer Beall testified that at one point Twitty threatened Officer Smiley by yelling, "Put

your gun down or I'm going to shoot you in your head...."  *Id.* at 214.

Viewing these Officers' testimony in the prosecution's favor, any rational jury could

conclude that Twitty repeatedly pointed a gun at Officer Smiley, threatened to shoot Officer

Smiley in the head, refused to put his gun down despite being ordered to do so by these Officers,

fired his gun at Officer Beall, and then began to again point his gun at Officer Smiley.  In light of

this evidence, any rational jury could determine that Twitty committed the offense of felonious

assault of Officer Smiley in violation of Ohio Rev. Code §2913.11(A)(2).  *See Green*, 58 Ohio

St.3d at 241-42.

      **C.**    **Conclusions**

Twitty's Seventh, Eighth, and Ninth Grounds for Relief are not cognizable in federal habeas corpus and lack merit.

**V.**    **INADMISSABLE EVIDENCE**

Twitty's First Ground for Relief states that he "was denied his constitutional right to a fair trial through admission of inadmissible hearsay evidence." (Doc. #2 at ¶12(A)).

The testimony at issue was given by a witness who overheard Twitty talking with his mother, Wilma Twitty, after he had shot at Kia Richardson and her daughter. Jackson's testimony, if accepted as accurate, doubtlessly assisted the prosecution in proving the felonious assault charges against Twitty because the witness essentially testified that she overheard Twitty confess to shooting at Kia Richardson and her daughter.

In the Ohio Court of Appeals on direct appeal, Twitty challenged the admission of the following testimony:

Q.    All right. Was there anyone else in the house there on Kensington?

A.    Yes, sir; there was.

Q.    And who would that be?

A.    Wilma Twitty and Raham Twitty.

Q.    Would you tell the court and jury what you heard?

A.    Well, I heard some noise. And I heard the momma saying: 'You did what? You shot at who?

Defense Counsel:    Object, your honor. Statements made by other persons.

* * *

(Sidebar off record)

Court:  Objection overruled.

* * *

Q.       Okay.  You overheard some conversations?

A.       Yes, sir.

Q.       Okay.  Who did you hear first?

A.       I hear the momma saying: You did what?

Q.       That is Wilma.

A.       Wilma.

Q.       And who's she speaking to?

A.       She was speaking to Raham, her son.

Q.       The defendant?

A.       Yes, sir.

Q.       What happens next?

A.       He said: 'I don't care momma.  She made me mad.  She made me mad.'

Q.       And Mrs. Twitty, Ms. Twitty said, I didn't teach you to shoot no baby and no girl. You know better than that.  I know, mamma.  But she made me mad.  She made me mad.

Defense Counsel:        I'm going to renew the objection just as to those statements.

Court:  Overruled.

* * *

A.       But, and I heard Raham say: 'I think they called the cops.'  And Ms. Twitty said: 'You know they did, dumb ass.'

14

(Doc. #5, Exh. 14 at 1-2 (quoting Trial Tr. 125-28)).

Twitty contends that the admission of this hearsay testimony prejudiced his defense because the prosecution frequently referred to this inadmissible testimony.  Twitty further contends that the Ohio Court of Appeals' rejection of this claim on direct appeal was contrary to, and an unreasonable application of, clearly established law.

Respondent contends that Twitty's hearsay challenge to the admission of this evidence is not cognizable in the present federal habeas corpus case because it merely raises an issue of state evidentiary law rather than a federal constitutional question.  Respondent contends that even if Twitty demonstrated a violation of state law, this purported violation does not rise to the violation of Twitty's right to a fundamentally fair trial under the Due Process Clause.

To the extent Twitty seeks to raise an issue of state evidentiary law based on the theory that the trial court erred in admitting the above testimony, such claims are not cognizable in federal habeas corpus.  *See* 28 U.S.C. §2241(a), (c)(3); *see also Williams v. Taylor*, 529 U.S. at 375; *Pulley v. Harris*, 465 U.S. 37, 41 (1984).  To raise a cognizable federal constitutional claim, Twitty must demonstrate that the trial court's admission of the above testimony violated his right to a fundamentally fair trial under the Due Process Clause.  *See Stuart v. Wilson*, 442 F.3d 506, 513 n.3 (6th Cir. 2006); *see also Walker v. Engle*, 703 F.2d 959, 962 (6th Cir. 1983).  Errors of state law become a federal constitutional concern when they "undermine confidence in the fundamental fairness of the state adjudication certainly justify the issuance of the federal writ." *Ruimveld v. Birkett*, 404 F.3d 1006, 1014 (6th Cir. 2005) (quoting *Williams v. Taylor,* 529 U.S. at 375)(other citations omitted).

Ohio evidentiary law defines "hearsay" as "a statement, other than one made by the

declarant while testifying at trial or hearing, offered in evidence to prove the truth of the matter asserted." Ohio R. Evid. 801(C); *see* Doc. #10, Exh. 18 at 6).

Two potential sources of hearsay evidence exist in the above testimony: (1) the witness' description of what Twitty said, and (2) the witness' description of what Twitty's mother said. The Ohio Court of Appeal held that Twitty's statements were not hearsay because they constituted an exception to hearsay as admissions of a party opponent. (Doc. #10, Exh. 18 at 11). As a matter of Ohio evidentiary law, this conclusion was correct. *See* Ohio R. Evid. 801(D)(2)(a). Twitty's statements were offered against him and were his own statements, as the Ohio Court of Appeals recognized, and consequently, Ohio R. Evid. 801(D)(2)(a) permitted the trial court to admit Twitty's statements through the testimony of another witness. Under AEDPA, this ruling was not contrary to a decision of the United States Supreme Court. Twitty has not pointed to a case decided by the United States Supreme Court, since none exists, finding any fundamental unfairness during a state criminal trial caused by non-erroneous admission of a witness' testimony about admissions of a party opponent. Twitty has also not shown that the Ohio Court of Appeals' decision unreasonably applied Supreme Court case law. This is so because the Ohio Court of Appeals' decision was correct under Ohio R. Evid. 801(D)(2)(a) and correctly concluded that no plain error occurred with regard to the admission of the evidence and because, absent error, no fundamental unfairness arose from the admission of the above testimony of a witness about Twitty's statements.

Turning to the witness' testimony about the statements by Twitty's mother, the Ohio Court of Appeals correctly determined that certain aspects of this testimony were not offered for the truth of the matters asserted and were therefore not hearsay. Under Ohio evidentiary law,

16

statements not offered to prove the truth of the matters asserted therein are not hearsay.  *See*

Ohio R. Evid. 801(C); *see also State of Ohio v. Davis*, 62 Ohio St.3d 326, 344 (19991); *Banks v.*

*Wolfe*, 2006 WL 1489764 at *26 (S.D.Ohio, May 30, 2006)(Kemp, M.J.).   The Ohio Court of

Appeals therefore did not err as a matter of state law by finding the following not to constitute

hearsay.  First, Twitty's mother asked, "You did what?  You shot who?"  These non-assertive

questions do not fall within the definition of hearsay for the simple reason that they did not assert

anything; they inquired about things.  *See State of Ohio v. Carter*, 72 Ohio St.3d 545, 549-50

(1995).  These non-assertive questions, moreover, cannot be proved either true or false, and

therefore cannot be offered for their truth, and they are thus not within the hearsay definition.  *Id.*

Second, Twitty's mother stated, "I didn't teach you to shoot no baby and no girl.  You

know better than that."  The Ohio Court of Appeals correctly held, as a matter of Ohio law, that

these statements were not offered to prove the truth of what they asserted – that Twitty's mother

did not teach him to shoot at people and that he knew better than to do that.  As such, the

witness' testimony about these statements did not constitute hearsay.  *See Davis*, 62 Ohio St.3d

at 344; *see also Banks*, 2006 WL 1489764 at *26.  Similarly, Twitty's mother stated (in response

to Twitty's statement, "I think they called the cops"), "You know they did, dumb ass."  Again,

the testimony about this statement was not offered to prove that Twitty or his mother knew

"they" (someone else) called the cops or that Twitty was a dumb ass, as the Ohio Court of

Appeals correctly found.  *See* Doc. #10, Exh. 18 at 8-9.  Consequently, the witness' testimony

about these statements was not hearsay.

One potential flaw appears in the Ohio Court of Appeals' further alternative explanation

of why these statements were not hearsay:

> The statements made by Defendant's mother were offered by the State to prove that defendant had confessed to his mother shooting at Kia Richardson and her daughter.  Thus, because those statements were offered for a purpose other than to prove the truth of the matters they asserted, they were not hearsay....

(Doc. #10, Exh. 18 at 9).  This gives pause because even if testimony was offered to prove the fact of Twitty's confession, the truth of confession itself cannot be separated from the fact that the confession occurred.  A confession by its very nature is proof of its admissions, its truth.  Yet, even if the Ohio Court of Appeals and the trial court erred by allowing this testimony, its admission at trial did not deprived Twitty of a fundamentally fair trial.  This was so because the record contained other evidence from which a jury could conclude beyond a reasonable doubt that Twitty threatened to shoot Kia Richardson and that he fired a gun as she ran away with her daughter.  *See supra*, §IV(B).  Twitty's confession to his mother was therefore not the only evidence upon which the jury could have based its finding that Twitty committed felonious assault of Richardson, and hence, no prejudice resulted from the admission of his confession.

Lastly, the admission of the witness's testimony about statements made by Twitty's mother did not otherwise implicate a violation of his right to a fundamentally fair trial.  The Ohio Court of Appeals correctly concluded that each of the remaining statements by Twitty's mother did not constitute hearsay and thus the admission of such statements at trial do not undermine confidence in the fundamental fairness of Twitty's trial.  Absent such a violation of Twitty's right to a fundamentally fair trial, his evidentiary challenges to his convictions fail to support issuance of a federal writ of habeas corpus.  *See Ruimveld*, 404 F.3d at 1014.

Accordingly, Twitty's First Ground for Relief raises issues of state law not cognizable in federal habeas corpus.  Twitty has otherwise failed to show that these claimed state-law errors denied him a fundamentally fair trial in violation of his rights under the Due Process Clause.

18

VI.     PROSECUTORIAL MISCONDUCT

A.      The Parties' Contentions

Twitty's Second, Third, Fourth, and Fifth Grounds for Relief raise claims of prosecutorial misconduct.

Respondent contends that Twitty has waived federal habeas review of his Second, Third, Fourth, and Fifth Grounds for Relief by committing procedural defaults in the Ohio courts. Respondent argues that although Twitty raised these claims in the Ohio Court of Appeals and the Ohio Supreme Court, he waived these claims for purposes of federal habeas review by failing to contemporaneously object during trial to the prosecutor's alleged misconduct.  According to Respondent, as a result of the failure to object during trial, the Ohio Court of Appeals rejected these claims under a plain error analysis thereby enforcing a state procedural bar against Twitty.

Twitty maintains that he did not commit a procedural default with regard to his claims of prosecutorial misconduct because the Ohio Court of Appeals rendered its decision on the merits of these claims and "no procedural default was addressed within the state courts."  (Doc. #13 at 5 (emphasis in original)).

B.      Exhaustion And Procedural Default

"Before seeking a federal writ of habeas corpus, a state prisoner must exhaust available state remedies..., thereby giving the State the opportunity to pass upon and correct alleged violations of its prisoners' federal rights."  *Baldwin v. Reese*, 541 U.S. 27, 29 (2004)(internal citations and punctuation omitted).  "To provide the State with the necessary 'opportunity,' the prisoner must 'fairly present' his claim in each appropriate state court..., alerting that court to the federal nature of the claim."  *Reese*, 541 U.S. at 29 (citations omitted).

19

To fairly present federal claims to the Ohio courts, a petitioner must raise the substance

of them in direct or delayed appeals to the Ohio Court of Appeals and the Ohio Supreme Court.

*Clinkscale v. Carter*, 375 F.3d 430, 437 (6th Cir. 2004); *see also Fields v. Bagley*, 275 F.3d 478,

482-83 (6th Cir. 2001).  A petitioner must also bring certain claims in a petition for post-

conviction relief under Ohio Rev. Code §2953.21 or in an Application to Reopen Appeal under

Ohio R. App. P. 26(B).  *See Lopez v. Wilson*, 426 F.3d 339, 342-43 (6th Cir. 2005)(*en banc*).

Regardless of which avenue of appeal a convicted defendant takes, he must properly raise

federal constitutional claims in both the Ohio Court of Appeals and the Ohio Supreme Court.

"'[S]tate prisoners must give the state courts one full opportunity to resolve any constitutional

issues by invoking one complete round of the State's established appellate review process.'"

*Williams v. Bagley*, 380 F.3d 932, 967 (6th Cir. 2004)(quoting *O'Sullivan v. Boerckel,* 526 U.S.

838, 845 (1999)).

If a petitioner fails to fairly present his or her federal claims to the state courts and if a

state procedural rule bars the petitioner from receiving in state court a merits review of the

federal claims, then the petitioner's procedural default may result in a waiver of the claims for

purposes of federal habeas review.  *See Bonilla v. Hurley*, 370 F.3d 494, 497 (6th Cir. 2004); *see

also Buell v. Mitchell*, 274 F.3d 337, 349 (6th Cir. 2001).

In Ohio, one way a petitioner may procedurally default is by failing to raise certain

contemporaneous objections during trial.  *See Scott v. Mitchell*, 209 F.3d 854, 866 (6th Cir.

2000).  As will be seen, Twitty failed to contemporaneously object during trial to certain alleged

misconduct by the prosecutor.  Consequently, his claims of prosecutorial misconduct must

surmount this potential procedural default in order to obtain a merits review of these claims by

20

this Court.

Only two limited situations excuse a procedural default:  (1) if a petitioner shows cause and prejudice, *Burton v. Renico*, 391 F.3d 764, 773 (6th Cir. 2004)(and cases cited therein), or (2) if the petitioner shows a fundamental miscarriage of justice will result from the failure to consider the merits of the claims.  *See Coleman v. Thompson*, 501 U.S. 722, 750 (1991); *see also Murray v. Carrier*, 477 U.S. 478, 485 (1986); *Monzo v. Edwards*, 281 F.3d 568, 575 (6th Cir. 2002).

> ### C.    Analysis:  Ground Two –
> <u>Mischaracterization Of Evidence During Trial</u>

Twitty first claims that he "was denied his right to due process and a fair trial through prosecutorial mischaracterization of evidence."  (Doc. #2, ¶12(B)).  He illuminates this claim by referring to the appellate brief filed by his attorney in the Ohio Court of Appeals, wherein he explained that during trial, the prosecution questioned Kia Richardson in part as follows:

> Q.    Okay.  You have previously testified that you were walking to your home when the defendant approached you with the gun and <u>fired at you</u>.  Is that correct?

> A.    Yes. Correct.

(Doc. #10, Exh. 14 at 6).  Twitty argues that the prosecutor's question mischaracterized Kia Richardson's prior testimony, because she had testified that she merely heard a gunshot when she ran away from Twitty and that she was not looking at Twitty at all.  *Id*.  Twitty contends that the prejudiced this caused – creating the impression that erroneous impression that he fired a gun – was reenforced when the prosecution repeatedly referred to a gunshot when questioning another witness, John Marks, without laying any evidentiary foundation.  *Id*. at 6-7.  Twitty concludes that without this mischaracterization of the evidence, the record lacked any evidence

showing that he fired a gun at Kia Richardson, and as a result, the prosecution's

mischaracterization of the evidence was the only basis for his conviction of felonious assault of

Kia Richardson.  *Id*. at 4-8.

      The Ohio Court of Appeals first ruled, "At the outset we note that Defendant failed to

object to the prosecutor's question.  Accordingly, Defendant has waived all but 'plain error,' and

he cannot prevail unless he demonstrates that but for the prosecutor's improper question, the

outcome of his trial would clearly have been different."  (Doc. #10, Exh. 18 at 14).  The Court of

Appeals then rejected Twitty's contentions on the merits, finding no plain error particularly

given the presence of sufficient evidence to support his conviction of felonious assault of Kia

Richardson.  *Id*. at 14-17.

      The Ohio Court of Appeals' recognition that Twitty failed to contemporaneously object

to the prosecutor's purported mischaracterization of the evidence identified a procedural default

requiring plain-error review.  "[I]t is clear that Ohio has a contemporaneous objection rule, and

that the Ohio courts treat the failure to object to a claimed error as a procedural default."  *Scott v.

Mitchell*, 209 F.3d 854, 866 (6th Cir. 2000).  "[A] state court's plain error analysis does not save

a petitioner from procedural default....  Plain error analysis is more properly viewed as a court's

right to overlook procedural defects to prevent manifest injustice, but is not equivalent to a

review of the merits."  *Lundgren v. Mitchell*, 440 F.3d 754, 765 (6th Cir. 2006) (citing *Scott,* 209

F.3d at 866) (footnote omitted).

      Twitty has therefore waived his Second Ground for Relief unless he demonstrates cause

and prejudice or that a miscarriage of justice will occur absent federal review of this claim.  A

review of the materials submitted by Twitty reveals neither cause nor prejudice to excuse his

procedural defaults. For the reasons stated below, Twitty's claims of ineffective assistance of trial and appellate counsel lack merit and thus these claims do not establish any cause for Twitty's procedural defaults. *See Howard v. Bouchard*, 405 F.3d 459, 478 (6th Cir. 2005).

To establish prejudice, Twitty must show "not merely that the errors at ... trial created a *possibility* of prejudice, but that they worked to his *actual* and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *Murray v. Carrier*, 477 U.S. 478, 494 (1986). Twitty cannot meet this high standard because, without considering the prosecutor's purported mischaracterization of evidence, the trial record contained sufficient evidence to support the jury's conclusion that he was guilty of felonious assault of Kia Richardson. *See supra*, §IV(B). As a result, the purported mischaracterization resulted in no prejudice to Twitty.

The miscarriage-of-justice exception applies only "in an extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent...." *Murray v. Carrier*, 477 U.S. 478, 496 (1986). To support an actual-innocence claim, a petitioner must show "factual innocence, not mere legal insufficiency." *Bousley v. United States*, 523 U.S. 614, 623 (1998)(quoting *Sawyer v. Whitley*, 505 U.S. 33, 339 (1992)). "To be credible, a claim of actual innocence must be based on reliable evidence not presented at trial." *Calderon v. Thompson*, 523 U.S. 538, 559 (1998)(citation omitted). In light of the evidence at trial, and given the absence of any new exonerating evidence, the record wholly lacks a basis for concluding that Twitty is actually, factually innocent of felonious assault of Kia Richardson, or that a miscarriage of justice occurred during his state criminal trial with regard to this conviction. *See Bousley*, 523 U.S. at 623; *see also Calderon*, 513 U.S. at 559.

Accordingly, Twitty's Second Ground For Relief is waived for purposes of federal

habeas review.

   **D.     Analysis:  Third Claim –
            Mischaracterization of Evidence During Opening and Closing**

Twitty claims that he "was denied his constitutional right to due process and a fair trial through the State's misstatement of evidence during opening and closing arguments."  (Doc. #2, ¶12(C)).  When rejecting this claim, the Ohio Court of Appeals recognized that Twitty failed to contemporaneously object to each of the prosecutor's purported mischaracterization of evidence during opening statements and closing arguments.  The Ohio Court of Appeals therefore applied a plain-error review to this claim, finding no merit to Twitty's attempts to show that the prosecutor mischaracterized the evidence.  (Doc. #10, Exh. 18 at 19-21).

The Ohio Court of Appeals' enforcement of Ohio's contemporaneous objection rule to conduct a plain-error review demonstrates that Twitty committed a procedural default by failing to contemporaneously object at trial to the prosecution's purported mischaracterizations of the evidence during opening statements and closing arguments.  *See Lundgren*, 440 F.3d at 765;  *see also Scott,* 209 F.3d at 866.

For the reasons stated above, Twitty has shown neither cause nor prejudice for this procedural default, and he has not shown that a miscarriage of justice will occur absent federal review of this claim.  *See supra*, §VI(C).

Accordingly, Twitty's Third Ground For Relief is waived for purposes of federal habeas review.

   **E.     Analysis:  Ground Four –
            Mischaracterization Of Evidence During Trial**

Twitty claims that he "was denied his constitutional right to a fair trial, as his trial was

saturated with emotion, which the state manufactured and exploited during trial." (Doc. #2, ¶12(D)). The Ohio Court of Appeals rejected this claim, finding that Twitty "failed to object to the Prosecutor's remarks about which he now complains. Accordingly, Defendant has waived all but 'plain error.'" (Doc. #10, Exh. 18 at 19-20). The Court of Appeals further determined, in a detailed review of Twitty's contentions, that he the prosecutor's conduct did not constitute plain error. *Id*. at 19-22.

Twitty committed a procedural default by failing to contemporaneously object at trial to the prosecution's purported mischaracterization of the evidence during trial, including the prosecution's purported efforts to saturate the trial with emotion or to exploit emotion during trial. The Ohio Court of Appeals' enforcement of this procedural rule and its plain-error review of these claims confirm this conclusion. *See Lundgren*, 440 F.3d at 765; *see also Scott,* 209 F.3d at 866.

Twitty has not established any cause for this procedural default, because his trial counsel did not provide constitutionally ineffective assistance, and because he has otherwise failed to show any other cause for his failure to contemporaneously object to the prosecutor's alleged misconduct. *See Bouchard*, 405 F.3d at 478. In addition, for the reasons stated previously, *see supra*, §VI(C), Twitty has also not shown that a miscarriage of justice will occur absent federal review of this claim.

Accordingly, Twitty's Fourth Ground For Relief is waived for purposes of federal habeas review.

F.      Analysis:  Ground Five –
        <u>Vouching For Witnesses and Stating Opinion</u>

Twitty claims that he "was denied his constitutional right to a fair trial through the State's misconduct in vouching for truthfulness of witnesses and stating an opinion of [his] guilt."  (Doc. #2 at ¶12(E)).  Twitty explained in his brief in the Ohio Court of Appeals that the prosecutor stated in his closing argument, "... this was not a who done it.  **We all know who committed each and every criminal charge in this case**."  (Doc. #10, Exh. 14 at 17)(citing Trial Tr. 259)(Twitty's emphasis).

The Ohio Court of Appeals rejected this claim as follows:

> The complained of remark was made by the prosecutor while explaining to the jury why the State had proved its case against Defendant on every charge. Viewed in its proper context, it is clear that this remark was simply a comment upon what the prosecutor believed the evidence presented at trial showed; that Defendant was the perpetrator of all these offenses, which is entirely proper.  It is not improper for a prosecutor to express an opinion as to defendant's guilt if that opinion is based upon the evidence presented at trial.  *State v. Keenan*, *supra*, at 408 [66 Ohio St.3d 402 (1993)].

> Defendant additionally complains that 'additional examples of vouching are found at page 260, 262, and 275 of the trial transcript.'  Defendant does not identify, however, those examples of 'vouching' (presumably for a witness's credibility), nor does he make any separate argument in his brief concerning them.  Under those circumstances, we will exercise our discretion and disregard this claimed error....

(Doc. #109, Exh. 18 at 31).

Unlike Twitty's other claims of prosecutorial misconduct, the Ohio Court of Appeals did not clearly state this claim was procedurally barred due to his failure to object during trial. *See id*. at 30-32.  This claim is therefore not barred from federal habeas review on the merits in the present federal habeas case.  *See Coleman,* 501 U.S. at 735; *Harbison v. Bell* 408 F.3d 823, 833 (6th Cir. 2005).

Twitty, however, has not shown that the Ohio Court of Appeals' merit-based decision was not contrary to, and did not involve an unreasonable application of, United States Supreme Court caselaw.  The Ohio Court of Appeals' reliance on *State of Ohio v. Keenan*, demonstrates that its decision was not contrary to Supreme Court caselaw because *Keenan* recognized and applied the standards set forth in *Donnelly v. DeChristophoforo*, 416 U.S. 637, 643-45 (1974) and *Darden v. Wainwright*, 477 U.S. 168, 181-82 (1986).  *See Keenan*, 66 Ohio St.3d at 410–11.

Under these standards, "[i]t is patently improper for a prosecutor either to comment on the credibility of a witness or to express a personal belief that a particular witness is lying." *Hodge v. Hurley*, 426 F.3d 368, 378 (6th Cir. 2005).  "[S]uch comments can convey the impression that evidence not presented to the jury, but known to the prosecutor, supports the charges against the defendant and can thus jeopardize the defendant's right to be tried solely on the basis of the evidence presented to the jury....  Second, "the prosecutor's opinion carries with it the imprimatur of the Government and may induce the jury to trust the Government's judgment rather than its own view of the evidence."  *Id*. (citations omitted).

A review of the challenged comments made by the prosecutor reveals that the Ohio Court of Appeals did not unreasonably apply these standards in Twitty's case.  It was not objectively unreasonable for the Ohio Court of Appeals to find that the prosecutor's identity statement – "We all know who committed each and every criminal charge in this case" – was based on what the evidence established at trial – i.e, that there was no dispute over the fact that Twitty was the person who committed the acts at issue.  At most for Twitty, the comment also identified Twitty as the person who committed the crimes, but the identity comment was followed by the prosecutor's arguments concerning what evidence supported Twitty's guilt of each charged

27

crime.  *See* Doc. #10, Trial Tr. at 260-75.  In this context, and when the prosecutor's closing

argument is read as a whole, the prosecutor's identity comment did not constitute misconduct.

*Cf. Hodge*, 426 F.3d at 378 -379 ("because these statements by the prosecutor were not coupled

with a more detailed analysis of the evidence actually adduced at trial, they convey an

impression to the jury that they should simply trust the State's judgment that Fenn was a credible

witness and that the defendant's witnesses were non-credible, if not perjurious"); *cf. also Greer*

*v. Mitchell*, 264 F.3d 663, 683 (6th Cir. 2001) ("'If a defendant testifies..., a prosecutor may

attack his credibility to the same extent as any other witness.....' Of course, such commentary

must be supported by reasonable inferences from the record and not simply represent the

prosecutor's own opinion.).

     In addition, the prosecutor's isolated identity comment did not "so infect[ ] the trial with

unfairness as to make the resulting conviction a denial of due process."  *Donnelly*, 416 U.S. at

643.  "In order to deny due process, the misconduct must be "'so pronounced and persistent that

it permeates the entire atmosphere of the trial' or 'so gross as probably to prejudice the

defendant.'"  *Simpson v. Jones*, 238 F.3d 399, 409 (6th Cir. 2000) (quoting *Pritchett v. Pitcher,*

117 F.3d 959, 964 (6th Cir.1997)).  In light of these high standards, even if the prosecutor's

comment was improper, it was brief and isolated, and thus it did not rise to a level that denied

Twitty's right to due process.  *See Simpson*, 238 F.3d at 409; *cf. Hodge*, 426 F.3d at 378

(identifying much more serious prosecutorial misconduct during closing arguments).

     Accordingly, the Ohio Court of Appeals' opinion was not contrary to, and did not

unreasonably apply, United States Supreme Court caselaw to this claim of prosecutorial

misconduct.  Twitty's Fifth Ground For Relief therefore lacks merit.

## VII.   INEFFECTIVE ASSISTANCE OF TRIAL COUNSEL

### A.     Twitty's Claims

Twitty's Sixth Ground for Relief asserts that he "was denied his constitutional right to effective assistance of counsel."  (Doc. #2 at ¶12(F)).  In his direct appeal to the Ohio Court of Appeals, Twitty argued that his trial counsel provided constitutionally ineffective assistance by:

1.     failing to object to the prosecution's mischaracterizations of evidence;

2.     incorporating the mischaracterization into his (defense counsel's) closing argument;

3.     failing to object to the prosecution's numerous instances of misconduct during closing arguments;

4.     failing to object to the questions by the prosecution that had already been asked and answered;

5.     failing to object to the prosecutor's lining up 28 live 30-caliber rounds on the witness stand or his failure to stipulate to this in order to prevent drama on the witness stand;

6.     failing to object to the prosecutor's appeal to the emotions and sympathy of the jury during opening statements and closing arguments;

7.     failing to object to the prosecutor's repeated references to Kia Richardson's daughter;

8.     failing to zealously represent his client by failing to support his Ohio R. Crim. P. 29 Motion with any oral argument;

9.     failing to object to evidence based on speculation or evidence admitted without proper foundation;

10.    questioning witnesses on cross examination in an insubstantial manner, which actually helped reenforce damaging testimony against Twitty; and

11.    failing to renew Twitty's Motion to Change Venue in light of the pretrial publicity, cameras in the courtroom, and police officers who filled the courtroom to capacity during trial.

(Doc. #10, Exh. 14 at 18-21).

In his Thirteenth Ground for Relief, Twitty claims that trial counsel provided constitutionally ineffective assistance by failing to raise obvious violations of his right to a speedy trial under both the United States Constitution and the Ohio Constitution.  (Doc. #2, ¶12(m)

B.    *Strickland v. Washington* And
        The Ohio Court Of Appeals' Decision

To establish constitutionally ineffective assistance of counsel ("IAC"), Twitty must show that his trial counsel's acts, errors, or omissions fell below an objective standard of reasonableness.  *Strickland v. Washington,* 466 U.S. 668, 687-88 (1984).  This demanding standard requires Twitty to establish that (1) his counsel provided deficient performance and (2) this deficient performance prejudiced his defense so as to render his trial fundamentally unfair and the result unreliable.  *Strickland*, 466 U.S. at 687.

The first *Strickland* prong mandates a highly deferential review of trial counsel's performance.  *Id*. at 689.  "[A] court must engage in the strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance...."  *Id*. at 689.  When trial counsel's acts or omissions constituted trial strategy, his or her performance was not constitutionally deficient.  *Id*.

The second *Strickland* prong requires that trial counsel's "errors were so serious as to deprive ... [him] of a fair trial, a trial whose result is reliable."  *Broom v. Mitchell*, 441 F.3d 392, 408 (6th Cir. 2006) (citing *Strickland*, 466 U.S. at 687).

Because the AEDPA precludes a *de novo* review of constitutional claims, *see Price*, 538 U.S. at 639, Twitty carries a heavy burden.  "The Supreme Court has made clear that post-

30

AEDPA claims of ineffective assistance of counsel brought by habeas petitioners will succeed only in very limited circumstances.... For [the petitioner] to succeed..., he must do more than show that he would have satisfied *Strickland*'s test if his claim were being analyzed in the first instance, because under §2254(d)(1), it is not enough to convince a federal habeas court that, in its independent judgment, the state-court decision applied *Strickland* incorrectly. Rather, he must show that the ... [state] Court of Appeals applied *Strickland* to the facts of his case in an objectively unreasonable manner." *Payne v. Bell*, 418 F.3d 644, 665 (6th Cir. 2005).

A review of the Ohio Court of Appeals' opinion reveals that the Court accurately described *Strickland*'s standards. *See* Doc. #4, Exh. 10 at 32. The remaining AEDPA issues therefore concern whether the Ohio Court of Appeals unreasonably applied these standards to Twitty's specific IAC claims. *See Payne,* 481 F.3d at 665; *see also Hill v. Mitchell*, 400 F.3d 308, 323-24 (6th Cir. 2005).

The Ohio Court of Appeals did not unreasonably apply *Strickland*'s performance or prejudice prongs to Twitty's IAC claims. First, it correctly determined that because Twitty's claims of prosecutorial misconduct (his first through seventh IAC claims) lacked merit, his trial counsel was not deficient in failing to contemporaneously object. The Ohio Court of Appeals explained:

> As we observed in overruling those claims, in the vast majority of instances the questions the prosecutor posed to his witnesses, and the remarks made by the prosecutor during closing arguments, did not mischaracterize the evidence or misstate the evidence, or unfairly appeal to the jury's emotions. Rather the prosecutor's remarks were an accurate and fair interpretation of the evidence presented. Hence, those remarks were proper and defense counsel's failure to object to them does not constitute deficient performance.

(Doc. #10, Exh. 18 at 33). This explanation did not constitute an unreasonable application of

*Strickland*'s standards because in the absence of prosecutorial mischaracterization of evidence and because Twitty's other claimed instances of prosecutorial misconduct lack merit, trial counsel did not err by failing to contemporaneously object to the prosecutor's purported misconduct.  In this manner, the Ohio Court of Appeal reasonably applied *Strickland*, which requires only a "fair assessment of attorney performance..., 466 U.S. 689, and which mandates that courts considering IAC claims make "every effort ... to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time.  Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance....'"  *Strickland,* 466 U.S. at 689.  By recognizing the inherent lack of merit in each instance of purported prosecutorial misconduct, Twitty has not shown that the Ohio Court of Appeals applied *Strickland*'s performance prong in an objectively unreasonably manner.  *See Payne*, 418 F.3d at 665.

Second, the Ohio Court of Appeals rejected Twitty's challenge to his trial attorney's failure to present oral argument in support of his Motion to Dismiss under Ohio Crim. R. 29 by reasoning as follows:

> When a Criminal Rule 29 motion for acquittal is made, it is the trial court's responsibility to review the evidence presented and determine whether the motion should be granted.  Defense counsel has no duty to supplement his motion with argument, *State v. Patterson* (Sept. 22, 1998), Franklin App. No 97-APA12-1682, although that is clearly the preferred practice.  Nevertheless, defense counsel's failure to present any argument in support of his Crim. R. 29 motion does not per se constitute unreasonable substandard performance.  Moreover, given the overwhelming evidence of Defendant's guilt on these charges, and the applicable law, there is no reasonable probability of a different outcome even if defense counsel had presented the arguments Defendant now claims should have been made in support of his motion for acquittal.  No prejudice has been shown.

(Doc. #10, Exh. 18 at 34-35).  This application of *Strickland*'s standards was not objectively unreasonable.  In addition to the reasons stated by the Ohio Court of Appeals, a review of the record reveals that Twitty's trial counsel zealously represented him throughout trial with only the relatively minor omission of oral argument in support of his Motion to Dismiss.  This was a relatively minor omission because trial counsel acted zealously throughout trial to defend Twitty.  Trial counsel, moreover, was presented with a very difficult case to defend.  Knowing that testimony by Officers Beall and Smiley, as well as Kia Richardson, would strongly support the prosecution's case against Twitty, and facing undisputed evidence that Twitty shot a police officer, during opening statements, defense counsel began to attack the most vulnerable part of the prosecution's case – the charge of felonious assault of Kia Richardson.  Defense counsel did so by presenting the theory – a theory Twitty repeatedly renews in the present case – that there was no evidence indicating Twitty pointed or fired a gun at Kia Richardson or her daughter.  (Doc. #10, Trial Tr. at 83).  Defense counsel cross-examined both Kia Richardson and John Marks and succeeded in eliciting acknowledgements that they never saw Twitty shoot a gun.  *See id*. at 108, 122.  Defense counsel also elicited the acknowledgement from Kia Richardson that she was running away with her back to Twitty when she heard a single shot.  *See id*. at 108.

Defense counsel presented thoughtful and cogent closing arguments, directed at the evidentiary weaknesses in the prosecution's case.  He emphasized that Richardson merely heard one shot, specifically arguing, "Heard being the key word in that because no one saw a weapon fired.  When that shot was heard, no one knows where that weapon was aimed.  When that shot occurred, we know that no one was injured.  We know that no one was hit when that gun was fired.  But no one was able to come in here and tell you that weapon was pointed at anyone.  She

33

obviously couldn't see.... [T]here is no proof beyond a reasonable doubt that there was anything that would constitute a criminal act between Mr. Twitty, Kia Richardson, and [her daughter] on May 15, 2000." *Id*. at 276-77. Defense counsel also presented various arguments for finding Twitty not guilty of felonious assault of Officer Smiley. *Id*. at 277. And he reminded the jury of its duty to set aside any feelings of sympathy and "where the evidence in this case does not exist, you must set aside that emotion and that sympathy you may feel. And also do your duty. And find Mr. Twitty not guilty of those counts that were not proven beyond a reasonable doubt." *Id*. at 278. Although the jury ultimately did not agree with defense counsel's closing arguments, the trial record reveals that counsel's performance throughout the trial fell within the wide range of reasonable professional assistance Twitty was constitutionally due. *See Strickland*, 466 U.S. at 689.

The Ohio Court of Appeals reasonably rejected Twitty's final two IAC claims – regarding alleged insubstantial questioning of witnesses and failure to renew a motion to change venue. The Ohio Court of Appeals recognized that Twitty had not identified particular instances of error regarding insubstantial questioning. (Doc. #10, Exh. 18 at 35). Absent such arguments, Twitty had not established that defense counsel's questioning fell outside the wide range of deference it was due under *Strickland*, 466 U.S. at 689. Consequently, the Ohio Court of Appeals did not misapply *Strickland*'s performance when rejecting this IAC claim.

As to trial counsel's non-renewal of Twitty's motion to change venue, the Ohio Court of Appeals explained:

> An examination of the voir dire proceedings refutes Defendant's claim that he could not get a fair and impartial jury. All of the jurors impaneled indicated that they could set aside anything they saw, heard, or read about in this case, and decide Defendant's guilt based solely upon the evidence presented in

> court. The trial court clearly did not abuse its discretion in overruling
> Defendant's pretrial motion for a change of venue. As to Defendant's claim that
> counsel performed deficiently because he failed during the trial to renew his
> motion for a change of venue, the trial record does not demonstrate that at some
> point during this trial jurors became unable to base their decision solely upon the
> evidence presented. In other words, this record does not demonstrate that a
> change of venue motion, had it been renewed during the trial, would have had any
> reasonable probability of success. Thus, defense counsel did not perform
> deficiently by failing to make that motion. Ineffective assistance of counsel has
> not been demonstrated.

(Doc. #10, Exh. 18 at 36-37). This explanation reveals that the Ohio Court of Appeals applied

*Strickland*'s performance standard in a reasonable manner, particularly since Twitty has not

pointed to any portion of the record that would contradict the Ohio Court of Appeals' findings

that the jury was properly examined during voir dire, was not impartial, and did not become

unable to base their decision on the evidence presented during trial. Given this, defense

counsel's decision not to renew Twitty's motion to change venue was neither erroneous nor

deficient performance. As a result, the Ohio Court of Appeals' rejection of this IAC claim was

not based on an unreasonable application of *Strickland*'s standards.

Turning to Twitty's claim that trial counsel provided ineffective assistance by failing to

raise obvious objections to violations of his right to a speedy trial, the trial record reveals that

Twitty waived his right to a speedy trial. During a hearing prior to trial, the trial judge

questioned Twitty about his waiver and explained to him that if he waived his right to speedy

trial, he would have no reason to complain in the event he was not tried within the required time.

(Doc. #10, Tr. at 34-38). Twitty stated that he had spoken to his attorney about this waiver, that

he had no questions about it, and that he waived his speedy trial rights. *Id*. The record also

contains a written form signed by Twitty indicating that he waived his speedy trial rights. (Doc.

#10, Exh. 6). Given this waiver, defense counsel did not provide deficient performance by not

rasing a speedy trial challenge.

Lastly, as to prejudice, Twitty has made no showing of prejudice resulting from any alleged deficient performance by trial counsel.  The record, moreover, contained strong evidence in support of many of the charges including the strong circumstantial evidence that Twitty committed the offense of felonious assault of Kia Richardson and Officer Smiley.  The Ohio Court of Appeals also correctly recognized that the evidence established that Twitty's acts themselves were highly provocative, explaining:

> In a trial with tragic facts such as these, emotions are a natural, expected, and unavoidable product of Defendant's conduct and the witnesses' attempts to describe for the jury what they observed.  There is nothing in this record which demonstrates that these jurors were adversely affected in any way by the emotional displays of the witnesses, that is, led to put the facts aside and react instead to emotion....

*Id*. at 27.  Given the evidence of Defendant's guilt, particularly testimony by Officer Smiley, Officer Beall, Kia Richardson, and John Marks, the Ohio Court of Appeals did not unreasonably apply *Strickland*'s standards when rejecting Twitty's IAC claims.

Accordingly, Twitty's Sixth and Thirteenth Grounds for Relief lack merit.

## VIII.  INEFFECTIVE ASSISTANCE OF APPELLATE COUNSEL

Twitty contends in his Twelfth Ground for Relief that he received ineffective assistance of appellate counsel because counsel inadvertently failed to raise trial counsel's ineffectiveness for failing to raise (in the trial court) obvious violation of his right to a speedy trial.  (Doc. #2 at ¶12(L)).  In his Motion to Reopen Appeal filed in the Ohio Court of Appeals, Twitty claimed that his appellate counsel provided ineffective assistance by not raising the following assignment of error on direct appeal:

Appellant received ineffective assistance of trial counsel when counsel failed to raise obvious violation of his speedy trial rights secured under both United States and Ohio Constitutions.

(Doc. #10, Exh. 23 at 4).

The Ohio Court of Appeals rejected Twitty's claim of ineffective assistance of appellate counsel due to his waiver of his right to a speedy trial.  (Doc. #10, Exh. 26 at 2-3).  Because Twitty's waiver – verbally on the record, (Doc. #10, Tr. at 34-38) and in writing (Doc. #10, Exh. 6) – appellate counsel did not provide constitutionally deficient performance by arguing other assignments of error on direct appeal.  This is particularly so not only due to the lack of merit in Twitty's speedy trial claim but also because the numerous other issues raised by appellate counsel presented a better chance at success.  *See* Doc. #10, Exh. 14.  Consequently, a review of appellate counsel's brief supports the conclusion that he did not provide constitutionally deficient performance on Twitty's direct appeal.  *See Whiting v. Burt*, 395 F.3d 602, 616 (6th Cir. 2005)(listing factors).

Accordingly, Twitty's Twelfth Ground for Relief lacks merit.

## IX.    TWITTY'S REMAINING CLAIMS

Twitty asserts in his Tenth Ground for Relief, "The trial court erred in failing to merge gun specifications."  (Doc. #2 at ¶12(J)).  The Ohio Court of Appeals rejected this claim finding that the trial court did not err by separating the gun specifications into three sets of charges: First, Counts 2 and 3, which involved firing a gun at Kia Richardson and endangering her daughter; second, Count 4, failing to follow police order to stop, which resulted in the car chase; and three, the remaining Counts.  The Ohio Court of Appeals determined by dividing the gun specifications in this manner, the trial court did not err as a matter of Ohio law, specifically Ohio

37

Rev. Code §2929.14(D)(1)(b), which prohibits imposition of prison terms for more one gun specification that are committed as part of the "same act or transaction."  (Doc. #10, Exh. 18 at 43-45).

Twitty argues that the trial court violated Ohio Rev. Code §2929.14(D)(1)(b) and that the imposition of consecutive gun-specification sentences in contrary to Ohio law.  *See* Doc. #13 at 13-15 ; *see* Doc. #2, ¶12(J); Doc. #10, Exh. 14 at 22.  He thus raises this claim as an issue of state law not cognizable in federal habeas corpus.  *See* 28 U.S.C. §2241(a), (c)(3); *see also Williams*, 529 U.S. at 375; *Pulley*, 465 U.S. at 41 (1984).

Twitty asserts in his Eleventh Ground for Relief, "The cumulative errors committed at trial denied [him] the constitutional right to a fair trial and requires reversal."  (Doc. #2 at ¶12(K)).  Because none of Twitty's claims have merit, the cumulative effect of his claimed error did not deprive him of his constitutional right to a fair trial.  *See Gillard v. Mitchell*, 445 F.3d 883, 898 (6th Cir. 2006) ("because Gillard's individual assignments of error would not support habeas relief, and the cumulative effect thereof is likewise insufficient.").

Twitty's Fourteenth Ground for Relief states, "Whether the Court of Appeals should have held a full and fair evidentiary hearing to address [his] genuine issue of Speedy Trial violation." (Doc. #2 at ¶12(N)).  Because the trial judge questioned Twitty on the record about his desire to waive his right to a speedy trial and because Twitty waived his right to a speedy trial both verbally and in writing, the Ohio Court of Appeals did not err by ordering a further hearing on this issue.

Twitty's Fifteenth Ground for Relief states, "Whether the Court of Appeals abused its discretion in an opinion contrary to another appellate judicial court expressly rejected in State v.

Santini." (Doc. #2 at ¶12(O)). Although Twitty does not provide a citation to *State v. Santini*, research reveals that Twitty is likely referring to *State v. Santini*, 144 Ohio App.3d 396 (2000). A review of *State v. Santini* does not reveal any potential error by the Ohio Court of Appeals in Twitty's case, and Twitty does not explain what error of federal constitutional magnitude occurred in his case that was similar to *Santini*. In fact, the Ohio Court of Appeals in *Santini* rejected the defendant's federal constitutional claims. 144 Ohio App.3d at 399-410. For these reasons, Twitty's Fifteenth Ground for Relief lacks merit.

Twitty's Sixteenth Ground for Relief states, "Whether the Court of Appeals denial of relief was 'contrary to' State and Federal Law." (Doc. #2 at ¶12(P)). This claim is wholly dependent upon the purported merit of the claims Twitty raised in the Ohio Court of Appeals. For the reasons stated throughout this report, the Ohio Court of Appeals' decision was not contrary to, and did not involve an unreasonable, application of United States Supreme Court caselaw. This Ground for Relief therefore lacks merit.

Twitty's Seventeenth Ground for Relief states, "Whether the Ohio Supreme Court should render proper interpretation to the ambiguity between appellate judicial district." (Doc. #2 at ¶12(Q)). Similarly, Twitty's Eighteenth Ground for Relief states, " Whether the Ohio Supreme Court should invoke appellate jurisdiction." (Doc. #2 at ¶12®). These claims do not demonstrate that the Ohio Supreme Court's decision to decline to exercise jurisdiction violated Twitty's federal constitutional rights or was contrary to, or involved an unreasonable application of United States Supreme Court case law. These claims therefore lack merit.

Twitty's claims in his Nineteenth Ground for Relief (raised in his Supplemental Traverse, Doc. #s 22, 24), "The trial court erred when it sentenced Mr. Twitty to non-minimum, maximum,

consecutive sentences based on facts not found by the Jury or Admitted by Mr. Twitty."  (Doc. #22 at 1).  Twitty bases this claim on *Blakely v. Washington*, 524 U.S. __, 124 S.Ct. 2531 (2004).  *Blakely* does not apply retroactively to cases on collateral review, such as Twitty's case.  "Regardless of whether *Blakely* established a 'new rule of constitutional law' within the meaning of [28 U.S.C.] §2254(b)(2)(A)..., the Supreme Court has not declared *Blakely* to be retroactive to cases on collateral review....  Moreover, no combination of cases necessarily dictate retroactivity of the *Blakely* decision....  *Blakely* itself was decided in the context of a direct appeal, and the Supreme Court has not since applied it to a case on collateral review.  In fact, the Supreme Court has strongly implied that *Blakely* is not to be applied retroactively...."  *In re Dean*, 375 F.3d 1287, 1290 (11th Cir. 2004)(citations omitted); *see Humphress v. United States*, 398 F.3d 855, 860 (6th Cir. 2005)(*United States v. Booker*, __ U.S. __, 124 S.Ct. 738 (2005) not retroactive); *see also Cooper-Smith v. Palmateer*, 397 F.3d 1236, 1246  (9th Cir. 2005).  Consequently, Twitty's Nineteenth Ground for Relief lacks merit.

Accordingly, Twitty's Tenth, Eleventh, and Fourteenth through Eighteenth, and Nineteenth Grounds for Relief lack merit.

## X.    TWITTY'S MOTION TO ORDER PRODUCTION OF EVIDENCE AND FOR EXPANSION OF RECORD

Twitty seeks an Order requiring Respondent to produce a copy of the videotape of his trial to demonstrate the overwhelming presence of police officers in the courtroom throughout his trial.  (Doc. #32).  He thus seeks production of this videotape in support of his Fourth Ground for Relief.  Since his Fourth Ground for Relief is waived for purposes of federal habeas review, *supra*, §VI(E), production of this tape is unwarranted.

40

Accordingly, Twitty's Motion lacks merit.

## XI.    CERTIFICATE OF APPEALABILITY

Before Twitty may appeal a denial of his habeas petition, he must first obtain a certificate of appealability.  28 U.S.C. §2253(c)(1)(A).  To obtain a certificate of appealability when a habeas petition is denied on the merits, the petitioner must make a substantial showing of the denial of a constitutional right.  *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).  This is accomplished by showing that reasonable jurists could debate whether the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further.  *Slack*, 529 U.S. at 484 (quoting *Barefoot v. Estelle*, 463 U.S. 880, 893 (1983)).

If the District Court dismisses the petition on procedural grounds without reaching the merits of the constitutional claims, the petitioner must show that jurists of reason would find it debatable whether the District Court is correct in its procedural ruling.  *Slack*, 529 U.S. at 484. The procedural issue should be decided first so as to avoid unnecessary constitutional rulings. *Slack*, 529 U.S. at 485 (citing *Ashwander v. TVA*, 297 U.S. 288, 347 (1936)(Brandeis, J., concurring)).

The conclusions that Twitty has waived his Second, Third, Fourth, and Fifth Grounds for Relief for purposes of federal habeas corpus review due to his procedural defaults, that he has not shown cause for his procedural defaults, and he has not made a colorable showing of actual innocence are not debatable by jurists of reason.  The conclusions that each of Twitty's remaining Grounds for Relief lack merit are not debatable among reasonable jurists.  Twitty's Petition, his supporting materials, his contentions, and the record as a whole do not otherwise

41

present issues adequate to deserve encouragement to proceed further.  Consequently, a certificate

of appealability should not issue.

## IT IS THEREFORE RECOMMENDED THAT:

1.      Raham Twitty's Petition for a Writ of Habeas Corpus (Doc. #2) be DENIED and
        DISMISSED;

2.      Twitty's Motion To Order Production Of Evidence And For Expansion Of Record
        (Doc. #32) be DENIED; and

2.      The case be terminated on the docket of this Court.


August 4, 2006

                                                     s/Sharon L. Ovington
                                                    Sharon L. Ovington
                                                    United States Magistrate Judge

## NOTICE REGARDING OBJECTIONS

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within ten days after being served with this Report and Recommendations.  Pursuant to Fed. R. Civ. P. 6(e), this period is extended to thirteen days (excluding intervening Saturdays, Sundays, and legal holidays) because this Report is being served by mail.  Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections.  If the Report and Recommendations are based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs.  A party may respond to another party's objections within ten days after being served with a copy thereof.

Failure to make objections in accordance with this procedure may forfeit rights on appeal.  *See United States v. Walters*, 638 F. 2d 947 (6th Cir. 1981); *Thomas v. Arn,* 474 U.S. 140 (1985).